THE HOUSTON AND GREAT NORTHERN RAILROAD CO. V. FRANK T. RANDALL.

1. NEGLIGENCE.—Whether it was negligence on the part of a railroad company to construct or permit the continuance of its road-bed with an open ditch under its track, is a question of fact for the jury. So, also, is the question, whether a plaintiff, having been injured by such ditch, contributed to the injury by his negligence.

2. SAME—CHARGE OF COURT.—See charge of court approved as submitting the issues of negligence and contributory negligence fairly to the jury.

3. EXCESSIVE DAMAGES.—Where the verdict appears to be palpably and manifestly excessive, it is the duty of the court in which the case is tried to set aside the verdict and send the case to another jury; and on it being made to appear, on appeal, that the court below erred in refusing to do so, the case will be reversed and remanded.

4. SAME.—See facts such as to warrant courts in sustaining a verdict for $12,000 damages.

APPEAL from Smith. Tried below before the Hon. M. H. Bonner.

Frank T. Randall, July 3, 1874, sued the Houston and Great Northern Railroad Co. for damages. The case is stated in the charge to the jury, extracts from which are given:

"The plaintiff sues defendant for damages for alleged injuries to him while an employé, as brakeman, on the railroad of defendant, caused by the cars of the company running over his arm and requiring the same to be amputated.

"The plaintiff alleges the injuries to have been occasioned by a certain open ditch left by the negligence of defendant on a side track of their road, into which he stepped while attempting, as brakeman, to couple the cars of defendant, by reason of which he fell to the ground, and said cars ran over his arm; and that said injury was occasioned without the fault, negligence, or want of care of the plaintiff.

"The defendant denies the allegations of the plaintiff, specially denying that it was negligence to leave said open ditch as the same was left, and that said injury was occasioned by the contributory negligence of the plaintiff."

* * * "Under these issues, the burden of proof is on the plaintiff; and to entitle him to recover, he must have shown to your satisfaction that he has been injured substantially as alleged, and that the same was caused by reason of the negligence of the defendant. If this has been shown to your satisfaction, the burden of proof then shifts upon the company; and it devolves upon the defendant to show that it is not liable for damage by reason of the contributory negligence of the plaintiff, as hereinafter charged.

"The defendant, as a railroad company, has no means to act except through its agents; and the act or negligence of a superintending agent or officer is, in law, the act or negligence of the company itself. It was the duty of the company to have used ordinary and reasonable care and diligence in furnishing a road-bed, with proper facilities for drainage, constructed according to the principles governing the proper construction of such railroads, so as to accomplish the ordinary purposes of said road, and also reasonably provide against such dangers as may be usually foreseen. If the defendant used such care and diligence in furnishing a

road-bed on that part of the road where the alleged injury occurred, then, in law, it would not have been guilty of such negligence as would make it liable to the plaintiff, as its employé, for damages for negligence in the construction of its road.

"It was the duty of the plaintiff, as brakeman in the service of the defendant, to have acquainted himself with the general duties of the position; and he assumed at his peril the risks and dangers naturally and usually incident to his employment as such brakeman, including the risk and dangers of such defects, if any, as were reasonably open to his ordinary inspection, under the circumstances. And if the testimony shows that the plaintiff knew of said open ditch, and failed to notify the defendant of the danger of the same, but, without objection or protest, continued in the service of the defendant, the law would presume that he assumed the risk incident to the same, and he could not recover a verdict.

"If the testimony shows that the defendant, under the rules above laid down, was not guilty of negligence in the construction of its road-bed, then, under the issues in this case, the alleged injuries to the plaintiff, so far as the defendant is concerned, would have been occasioned by one of those accidents incident to all human works, which would not render the company liable, and you should find for defendant.

"If, however, the plaintiff has shown to your satisfaction that the defendant failed to use such ordinary and reasonable care and diligence in the construction of said road-bed as is required under the charge above given; that the injury complained of was occasioned as the direct or proximate cooperating result thereof, and that the same happened without the fault or contributory negligence of the plaintiff, as hereinafter charged, this, in law, would be such negligence on the part of defendant as would render the company liable, and you should find for the plaintiff.

"Whether leaving an open ditch on the side track of the

railroad, if shown by the evidence, was, under the circumstances as shown, negligence or not, is for you to determine, under the law in this charge, from all the evidence on this point." * * *

" If there be negligence on the part of defendant, ' then whether the company should be exempt from liability by reason of contributory negligence of the plaintiff, is also a question for your determination, under the evidence, as applied to the law of contributory negligence.' * * *

" Negligence, in a general sense, is every omission to perform a duty imposed by law for the protection of one's own person or property, or that of another. Negligence, to some extent, should be measured by the character, risk, and exposure of the business under consideration; and the degree of care of all parties is higher when the lives and limbs of themselves or others are endangered than in ordinary cases.

" Ordinary negligence is the want of such care and diligence as reasonably prudent men generally, in regard to the subject-matter of inquiry, under such circumstances as those under consideration, would use to endeavor to prevent the injury complained of.

" Contributory negligence is negligence not only upon the part of the one committing the injury, but also upon the part of him upon whom the injury is committed, and by which they both contribute thereto.

" One who is injured by the ordinary negligence of another cannot recover damages therefor, if the injured party by his own ordinary negligence or willful wrong, proximately contributed to the injury, so that it would not have happened but for his own fault. If the party injured by his own carelessness substantially contributed to the injury, or might, by the exercise of ordinary care, such as prudent men generally would have used under similar circumstances, have avoided the injury, he cannot recover damages.

" The law required of the plaintiff, as brakeman, for his own self-protection, the use of such ordinary care in the perform-

ance of the duties of his position as prudent men under similar circumstances would employ; and if the testimony shows that the defendant in the first instance was guilty of negligence, in the want of the use of due and reasonable diligence, as before stated, in the construction of its road-bed, and in leaving an open ditch in the side of the same, by means of which the plaintiff was thrown in such position, in his attempt to couple the cars of the defendant, as to have had his arm injured; and if the testimony further shows that the plaintiff, by his own ordinary negligence, in not using such means and precautions as were proper and usual with prudent brakemen generally under similar circumstances, the plaintiff contributed to his own injury, so that the same would not have happened but for this mutual contributory or coöperative negligence of both, then the plaintiff would not be entitled to a verdict.

" Whether the plaintiff was. guilty of such contributory negligence in this case, it is the duty of the jury to determine from the evidence; and in this connection you should look to the testimony in regard to the duty of brakemen generally,— the precautions they should take for their own safety; whether the plaintiff performed these duties and adopted the precautions; whether the plaintiff knew of the danger from the ditch, and, without notice to the defendant and objection thereto, continued in the service of the defendant, and thereby was presumed to assume the risk of the danger.    On this point you should look to the evidence, if any, of the actual knowledge in regard to said ditch, or that which he might have had by the use of such reasonable means of inquiry and observation at his command, of which ordinarily prudent brakemen generally, situated as he was, would have availed themselves."

The remainder of the charge was on the measure of damages.

. The jury found for plaintiff and assessed the damages at $12,000, for which judgment was rendered.

Motion for new trial was overruled, and the defendant appealed.

*Jones & Henry*, for appellant, cited Union Pacific R. R. Co. v. Milliken, 8 Kan., 647; Chicago and N. W. R. R. Co. v. Jackson, 55 Ill., 492; Illinois Central R. R. Co. v. Welch, 52 Ill., 183; Greenleaf v. Illinois Central R. R. Co., 29 Iowa, 14.

*Robertsons & Herndon*, for appellee, cited Shear. & Red. on Neg., secs. 444–447, 606; O'Donnell v. Alleghany R. R. Co., 59 Penn., 239; Snow v. Housatonic R. R. Co., 8 Allen, 441; S. R. R. Co. v. Kendrick, 40 Miss., 374; Wheaton v. N. B. and M. R. R. Co., 36 Cal., 590; Ransom v. New York and Erie R. R. Co., 15 N. Y., 415; Curtiss v. Rochester and S. R. R. Co., 18 N. Y., 534; Walker v. R. R. Co., 63 Barb., 260; Maloy v. New York Central, 58 Barb., 182; N. O. J. and G. N. R. R. Co. v. Hurst, 36 Miss., 660; Spicer v. Chicago and N. W. R. R. Co., 29 Wis., 580.

Moore, Chief Justice.—The gravamen of this action is that appellee, the plaintiff in the court below, while he was endeavoring, in the proper discharge of his duty as a brakeman on one of appellant's trains, to couple two of appellant's cars on its side track, at Lindale depot, Smith county, fell into an open ditch across said track, whereby, without negligence or fault on his own part, as he alleges, he was most grievously injured.

Though other minor questions are incidentally suggested in the record, a careful analysis of it shows that, unless there was error in the court below touching one or more of the three points discussed by appellant's counsel, the judgment should be affirmed. These points are—

I. That it was not negligence on the part of the appellant to construct or permit the continuance of its road-bed with the open ditch under its track into which appellee fell.

2. If it was negligence on the part of appellant to leave the

ditch in question open, appellee, in stepping into it, was guilty of contributory negligence.

3. The amount of damages given appellee by the jury is so grossly excessive that a new trial should have been granted.

The jury were correctly instructed by the court that appellee was not entitled to a verdict unless the testimony should lead them to decide both the first and second of the above propositions in his favor. Whether appellant's track was constructed in the manner it should have been, or was in such condition for the proper discharge of the duties which devolved upon appellee by reason of his employment as he had a right to expect; or whether appellee was guilty of negligence in not having informed himself as to the condition of the track, and especially that part of it where he was required to couple the cars; or whether he was guilty of negligence in the manner in which he conducted himself while endeavoring to effect the coupling, were, unquestionably, questions of fact to be determined by the jury. (T. and P. R. W. Co. *v.* Murphy, 46 Tex., 356; Curtiss *v.* The Rochester and S. R. R. Co., 20 Barb., (Sup. Ct.,) 282; Hegeman *v.* The Western R. R. Co., 16 Barb., (Sup. Ct.,) 353.) The court, we think, fully and fairly instructed the jury upon the law applicable to their determination. The charge given to the jury seems to us fully as favorable to appellant as could have been asked of the court. The evidence upon each of the questions involved in these propositions is strongly conflicting. In the absence of any apparent reason to discredit the correctness of the conclusions of the jury in respect to them, their verdict cannot be disturbed.

As regards the other question, we have had much more difficulty in reaching a satisfactory conclusion. The amount of damages assessed by the jury, $12,000, certainly seems to us exceptionably large. There was no evidence before the jury of the amount or payment of a medical bill, or other special expenses incurred by appellee by reason of his injuries. We must, therefore, infer, and especially in view of

the clear and pointed charge of the court on this branch of the case, that the jury regarded the amount found by them as the proper estimate of, first, "the value of the time lost by the plaintiff during the period necessary for his cure and while disabled from his injuries to work and labor, taking into consideration the nature of his business and the value of his services in conducting the same; second, fair compensation for the mental and physical suffering caused by the injury; third, the probable effect of the injury in future upon his health and use of his limbs, and his ability to labor and attend to his affairs, and generally any reduction of his power and capacity to earn money and pursue the course of life which he might otherwise have done." (20 Barb., (Sup. Ct.,). 282; Fields' Law of Dam., secs. 614, 615, 638, and cases cited.)

The evidence shows that the appellee's injuries were of a permanent character. That they had occasioned him great physical and mental suffering, and would continue to do so for the remainder of his life, is beyond doubt. They certainly were of a most grievous and perilous nature, necessitating a surgical operation extremely critical and often fatal, even when performed by the most skillful surgeons. The law furnishes no fixed or defined standard for the guidance of the jury in awarding compensation for such injuries. Unless we say that an action should not lie for an injury for which there is no pecuniary measure of comparison, the amount of damages to be awarded in such cases must be left to what may reasonably be inferred to be the general sense of right and justice of the community, as indicated by the verdict of a jury of twelve men, ordinarily composed of persons engaged in different occupations and pursuits, and representing all grades and conditions of social life.

But while so broad a discretion is necessarily committed to the jury in fixing the amount of damages for such injuries as those referred to, it is, unquestionably, not without limit or control. Where the verdict appears to be palpably and

manifestly excessive, it is not only within the power, but is, unquestionably, the duty of the court in which the case is tried to set aside the verdict and send the case to another jury; and if it is made to appear here that the court below erred in refusing to do so, this court should reverse and remand the case for another trial.   While, however, the right of the court to set aside the verdict for this reason is in some instances absolutely essential to the proper adminis- tration of justice, and should be exercised without hesitation in all cases where the facts and circumstances demand it, yet it is never done except with the utmost circumspection and caution.   The court should not interfere merely because it thinks the verdict too large.   It is, unquestionably, one of the peculiar duties of the jury to assess damages; and because the law furnishes no legal rule for their admeasurement it does not warrant, but, on the contrary, should rather restrain the court from substituting its sense of what would be a rea- sonable compensation for the injury complained of for that of the jury.   As is said by a standard elementary author, in treating of this subject: "The law favors the presumption that the jury are actuated by pure motives.   It, therefore, makes every allowance for different dispositions, capacities, views, and even frailties in examining heterogeneous matters of fact, where no criterion can be supplied; and it is not until the result of the deliberations of the jury appears in a form calculated to strike the understanding and impress no dubious conviction of their prejudice and passion that courts have felt themselves compelled to interfere." (Graham on New Trials, 452.)   And, says Kent, Ch. J., in Coleman *v.* Southwick, 9 Johns., 45, "The damages must be so excessive as to strike mankind at first blush as being beyond all reason unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, preju- dice, or corruption.   In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to

draw the line; for they have no standard by which to ascertain the excess."

These citations are no doubt more directly applicable to cases of vindictive damages than to actions such as this, where the recovery should be merely compensatory, although the law furnishes no legal measure of compensation. We do not, therefore, make these quotations to indicate a rule of action which should guide the court where a new trial is sought for excess in the verdict, even in cases to which they more directly refer, but to indicate the extreme reluctance which is always shown by courts and jurists of highest authority in interfering with the assessment of damages by juries.

But it is unnecessary to protract this opinion to greater length. We will merely add, in conclusion, that although we entertain serious doubts whether the amount of this verdict did not result from a feeling which seems to have taken hold of the popular mind, as is plainly manifest in many of the records brought to this court, that a different rule of damages should be applied against railroad corporations from that applicable under like circumstances to individuals, still we do not feel prepared to say, on a comparison of the verdicts in similar cases which have come under our observation, where applications for new trials have been urged on account of excessive damages, which is the only criterion for our guidance in the absence of anything in the record to indicate that the jury were actuated by prejudice, passion, or other improper considerations, that the verdict in this case, though much larger than it seems to us it should have been, is so excessive as to require a reversal of the judgment. (Caldwell v. New Jersey Steamboat Co., 47 N. Y., 282; Curtiss v. Rochester and S. R. R. Co., 20 Barb., 282; Illinois Central Railroad Co. v. Welch, 52 Ill., 183; Shaw v. Boston and Worcester Railroad Co., 8 Gray, 45; Collins v. Boston and Albany Railroad Co., 12 Barb., 492; Clapp v. Hudson River Rail-

road Co., 19 Barb., 461; Mobile Railroad Co. *v.* Ashcraft, 48 Ala., 15; Huckle *v.* Money, 2 Wilson, 205.)

The judgment is affirmed.

AFFIRMED.

[Justice BONNER did not sit in this case.]